On behalf of the Avalon, Mr. William J. Brock, and on behalf of the FLE, Mr. William S. Turley. Mr. Rush, do you have any relation to Philproc? No, Your Honor. I wish I did. Very good. I just know Philrock not very personally. I just know that he worked very hard for people who were hard of hearing. And even though he was a Democrat, I respected him. I respect a lot of Democrats. I'll make my own disclosure. I'm familiar with Philrock. I'm familiar with Hardrock. Okay. Thank you. I have no rocks. It is a unique last name. You may proceed. May it please the Court, opposing counsel, Your Honors, good morning. My name is William Brock. I represent the plaintiff Avalon to Charles St. Martin. Briefly, as a background to this case, this is a personal injury matter where the plaintiff tripped and fell when entering the defendant's premises, which is a hotel, through the front doors of a main entrance. The issue presented in this appeal is whether the defect that we'll get into is de minimis in nature as a matter of law. Well, let's assume that it's de minimis. I mean, we can dispute whether it was an inch and a half or an inch and three quarters. I mean, there is some issue there. Let's concede it was under two inches. Is that fair to say? That's a concession that, yes. Let me ask you the really threshold question, or really the ultimate question. Sure. Why wouldn't the de minimis rule apply to this case? I believe it's a three-pronged assessment, Your Honor. First, we could look at the size of the defect, which we can agree is less than two inches. I think, secondly, we can look at the location of the defect. And thirdly, we can look at some aggravating factors that we presumably have a distracted plaintiff. If we're to skip over the argument on the size of the defect, the location of the defect is a determining factor as to whether the defect is actionable. It's uncontested that the plaintiff was in a designated smoking area, basically went into the hotel and came back out. This is a new environment to him as he being from Arizona and this being his first night at this hotel. It is a main entrance and exit of the hotel. I believe that's uncontested. Exactly where is the defect in relation to the door and the smoking area? Sure. So the plaintiff was smoking about 10 to 12 feet away from the main door. The way that the main door is set up is there's a rotating door in the middle and two main side doors. You can use that either side of that main door. If we look at it, the plaintiff is using the left hand of the side doors that are right off of the rotating door. Okay. Directly in front of the door that the plaintiff was using is a Hilton floor mat covering up some of the sidewalk. Further, the door that the plaintiff was using is a mirrored door with some insignia on it. So a plaintiff, having been 12 or 10 feet away from that door, finishes his cigarette, walks the 10 to 12 feet. There's evidence in this case that this is a front entrance of a larger hotel, that there is a gentleman who eventually comes to assist the plaintiff getting him up off the ground who was in his vehicle. I think that's notable as far as the distraction and the plaintiff considering his environment in traversing that 10 to 12 feet. And then the evidence in today's case is that as the plaintiff is literally extending his arm to open the door and operate the handle on the door, trips and falls. So this is right outside the door, basically. Correct. He falls. The front door mat, to give you some idea of the proximity, the front door mat is a rather standard site in the Chicagoland area. He falls directly in front of that front door mat onto the door mat. So we're in very close proximity to a main point of ingress and egress to the hotel, to the fenced premises. I believe that, in light of the size of the defect, the location of the defect should be weighed by a jury, should be considered by this court. How do you distinguish this case from the Hartung case? As you know, there's analogies to be drawn. Hartung was also a defective sidewalk located in a shopping center, commercial establishment. Why isn't Hartung controlling in this case? I believe that the location of the defect is different than in Hartung. My understanding of the Hartung case, well, I do make argument in the brief as to the size, it being a hole and this being a difference in height between two pieces of concrete, that the size is analogous as far as the discrepancy in the height. And also, the location is distinguishable, however. We're mere feet, essentially two steps away from the front door of the hotel. And I think that sets it apart from the Hartung case. So if you were to suggest a bright-line ruling or holding for this case, what would it be? Well, I believe that looking at the location of the defect in light of its close proximity to a main point of entrance and egress, I'm not saying that this isn't the only way in and out of the hotel, like I believe in Hartung, it was the only point of ingress and egress, unless I'm getting my cases mixed up, which I don't believe I am. This is the main point of ingress and egress. This is a designated smoking area that essentially the defendant directs its invitees to go to and use. To use that area. So did you plead these aggravating factors? I believe so, Your Honor. Other than lighting, what did you plead were the aggravating factors that take this out of the rule of Hartung? I don't believe that lighting is an issue in this case. Our plan does say that it's adequately lit, which would distinguish it from Hartung, I believe. But as far as the aggravating factors, the nature of the crack and the location of the crack, or height discrepancy, I believe takes it outside the Hartung case. So you're saying the location right by the door, the landowner is directing the patrons to use this area? Correct. Didn't you allege that the area had poor lighting? I thought you alleged that. It may have been an allegation in our initial complaint, but hashed out through moral discovery, the plaintiff did say that it was adequately lit enough that he wouldn't have noticed it one way or the other if it was lit more. Just to summarize, not to belabor it, the lighting is not an issue. You're hanging your head on the fact that, first of all, it's a commercial establishment, not a municipality or residence. The defect is right outside the door. The landowner directs the patrons, and this is a commercial building. It's not difficult for them to monitor a small area as it would be to monitor a parking lot. I agree. As far as the municipality-type case, this isn't a buffalo box in one section of a sidewalk that the city of Naperville has to patrol hundreds of miles of sidewalk. In a commercial context, this isn't a far-off corner of a parking lot. We're talking about an area directly in front of the main door of a hotel, which I believe a jury should consider, a jury can consider, in light of the defect. You allege all of these things in your complaint, correct? That's my understanding, that we did allege. You did or you didn't? Not the lighting. Well, we may have alleged that lighting was at issue. Set the lighting aside. Did you allege all the other things? The location of the defect. The smoking? The close proximity that he was in. I can handle that on a huddle. I will pull the complaint. That would be fine. That it was a designated smoking area, yes. The location of the defect in close proximity to the front door, to the main area of ingress and egress. Mr. Rock, this was a motion for summary judgment? Yes, Your Honor. Under 619? Yes, Your Honor. So you talk about pleadings. I'm not so much concerned about pleadings so much as I'm concerned with whether or not you establish that arguably you've presented a crime-offensive case. And in the process, through affidavits and other exhibits and evidence, the question then becomes whether there's a material issue of fact. So when you're talking about whether or not your pleadings contain these allegations, I think I'd be more concerned with whether or not the evidence that was presented in arguably establishing a crime-offensive case was presented to the trial court. Sure. So I think what we can look at is the plaintiff's testimony, the photographs taken by the plaintiff. When you say testimony, you're talking about a deposition? Correct. The photographs that were taken in a short time thereafter, the plaintiff's injuries, and then the plaintiff reviewing those photographs at a deposition saying, yes, essentially, to paraphrase, that's the area in which I fell. There was a ruler in some of the photographs. That's the height discrepancy. I understand we're not arguing that exactly this morning. Are you arguing that there were material issues of fact, that summary judgments should not have been granted and should go on to a jury, or are you arguing that you should have been granted summary judgment? Arguing that it was air to grant the summary judgment and that there are considerations, there are factual considerations that are appropriate for jurisdiction. There are material issues of fact. Correct. What are they? They are both outside of the size of the defect, the location of the defect, and the potential, as this Court addressed in prior cases, the presumption that we have a distracted plaintiff navigating this area, an area where there were vehicles, where the plaintiff was literally going to operate. How is he distracted if he's a foot from the door? Or two feet, however big the mat was. I agree and appreciate the question, and I think that's what raises a question sufficient for a jury's consideration, that he is entering a door that's unfamiliar to him, that's mirrored. There's a mat on the ground with insignia. He's literally moving one of his hands forward to operate that door and isn't appreciating potentially what's directly below him or the defect that did eventually cause him to unfortunately fall. Okay. So it's not we do not have to consider that whether or not reasonable minds would disagree. We have to determine whether or not they're material issues of fact. And I think in light of all things considered, and most favorable to the plaintiff being the non-moving party, that there are. Correct, Your Honor. And I think that we can look to the trial court's ruling where he does say that it's, and for what it's worth, he does say this is an interesting case and that there are gray areas in these cases. Those gray areas, it's our proposition that those gray areas equate to the question of fact. All right. Is gray an absence of color or is it a combination of pigments? That's a great question better posed for my wife, who has an art history background. I believe that as a legal term of art, that it would mean something that 12 people should consider, not the trial court. And with that, we respectfully ask this court to reverse the trial court's ruling and remand it for further proceedings. Thank you. Thank you, Your Honor. We still have an opportunity to make rebuttal. Thank you. Mr. Cook. Good morning, Your Honors. Good morning, and may it please the Court, opposing counsel. My name is William Cook. I'm appearing here today for First Hospitality Group, which does business as Indian Lakes Resort. We're going to ask this court to affirm the circuit court's decision that granted summary judgment in favor of our client for two reasons. As the panel has already discussed with opposing counsel, we believe here that the de minimis rule applies and the circuit court properly granted summary judgment for that reason because it bars plaintiff's cause of action. And also, the other factor that counsel did not mention is that there was expert testimony in this case, unrebutted expert defense testimony, establishing that the area where plaintiff fell was not unreasonably dangerous and was safe. We believe that. There's some dispute, I think, and again, I don't even know that the case turns on that. I thought there was some issue whether or not your expert really attempted to deal with the condition as existed two years earlier, which is very difficult to do anyway. But let's set that aside. Here's really, I think, the crux of the issue. This de minimis rule, would you agree, had its genesis in cases against municipalities where the court, I think, appropriately reasoned it's very difficult to expect anyone, including a municipality, to inspect and monitor large areas. Is that not correct? I think that's part of it, Your Honor. Yes. Well, that started the rule, okay? It was first announced in connection with the municipal case. So if the rule is, and I think it's fair, and I think it's sort of the underlying reason for Hartung, you've got a large area, you can't expect a commercial establishment even to be patrolling large areas, inspecting large areas, shopping centers, sidewalks. He sort of makes a point, well, wait a minute. Does that rationale apply here? We're not asking them to be responsible for large areas or really large sidewalks or really any sidewalks other than a very narrow 10-foot strip right outside of their building. Okay? So that's my first question. Secondly, something I guess that just struck me we don't have in any of these other cases. He's saying the commercial establishment has taken it upon itself to direct its patrons to use this area. That doesn't apply in any other case. And certainly in Hartung there's no allegation that the people in the commercial shopping center were telling people where to go. So doesn't that bear on this issue? Judge, I think to answer that question, I think the other rationale underlying the de minimis rule is the fact that the courts recognized that given our weather conditions, which sounds like we're going to experience in the next 24 hours, is that with the changing weather conditions it's impossible to maintain perfect sidewalks at all because the changing weather conditions will change the elevation because it's based on the foundation of different soils and things of that nature. And I think that's what applies here. We have an outdoor sidewalk, and based on the de minimis rule, it's impossible for landowners, municipalities to keep these in perfect condition and to keep them. Well, it's not necessarily impossible because, as we all know, if we're existentialists, there's nothing that is impossible if you're willing to throw enough money at it. Sure. I guess it's more impractical and it's more difficult to maintain these in perfect condition. The duty that's to be foreseen is the responsibility to be obeyed. That could be the ruling, but now it's standing there. How difficult is it to monitor 10 feet in a practical manner? Sure. And I guess maybe it's not the issue of monitor, but I guess the whole point of the de minimis rule is the courts say there are certain variations we're willing to accept as not being a reasonable risk of harm. Yeah, but I think this is also, let me quote you the harsh one. It doesn't just say, quote, the de minimis rule cannot be applied blindly or to cover every situation. Its application may well depend on the fact. So I think what they're saying is you can't say, well, okay, if it's under three inches and you're in Illinois, forget it. You can never recover. Okay? Even if you've got a doorman telling you you've got to walk over this defective spot. I mean, you could reach the point of absurdity on the other side, couldn't you? You can't use the de minimis thing as a sword in every instance. Okay? You've got to keep it in context. Correct. And that's why I think that the proper stating of the rules, essentially, that's a two-part factor where the courts say de minimis, a variation that's two inches or less, is considered de minimis absent these aggravating circumstances. Right. As a matter of law. Correct. Aggravating circumstances. He's saying, wait a minute. You've got your hotel telling people where to walk. If you control your people, isn't there a corollary obligation to make sure they don't get hurt? Sure. And, Judge, I think the way to answer that is that the door the plaintiff entered, I think there's two factors that establish that there are not aggravating factors here that take this case out of the de minimis rule, is that, as counsel mentioned, there are three doors at the entrance. There's the main door and then there's two side doors. So the door the plaintiff was going to enter was on the left side. So he's not even going to enter the main entrance at the hotel or the main door there. He's entering a side door. Well, what's the difference if you tell him he's got to use the front to go smoke? What's the difference when Dory comes in and out? Well, I don't know that there's evidence in the record saying that he had to use that door to go smoke. He just had to go outside his front area. Correct. I'm not saying that the hotel told him what door to go in and out of, but if you tell somebody the only way you can smoke here in this establishment is to go out this front area, that's a little different, isn't it? Well, did they tell him that or did they just say he can't smoke in the building? Well, I don't think that there's evidence in the record either way, but I know that there was a designated smoking area outside. And that was a specific area which would have been further to the left of the left door? Correct. And I think the thing that distinguishes this case is that there's no reason that the plaintiff had to enter through the left door. There were two other doors he could have entered through, including the main door at the entrance. So I think the other factor that the plaintiff... Well, isn't it unreasonable for him to enter through the left door? Well, I don't know that it's unreasonable, but I think that the question is whether or not there's a duty here. And I think if there are multiple doors here and the plaintiff's not even entering through the main door, I think that the duty matters in that fact that if he isn't walking in front of the main door, that's maybe different. Maybe I'm not getting this thing clear, but maybe we need a diagram. He was outside. Is there any dispute he was using the designated smoking area? I don't think there's anything in the record that disputes who was out there. Okay. He's using the designated smoking area. He's coming back through a door that's open to the patrons after he gets done smoking, correct? Correct. And he falls on this alleged defect. Correct. That's what he alleges. So what was it about his actions that take it out of the de minimis rule? Well, I think it's the fact you have to look at the fact that this is, I think, a side door. The location of the defect matters because it was not the main entrance. It was a side door. It was not the main door to enter the hotel. Is there any markings on there saying use the revolving door or don't use this door or anything? I don't think there's any evidence in the record. And it's the door closest to the smoking area, right? I believe it is the door closest to where the one smoking area was. And I guess we don't know. The door he went in through? Yes, the door he went in through. Well, he would have entered. Correct. But I think the one thing that's not in the record is we don't know if there's another designated smoking area over on the right-hand side where the right door was. But we know he did go through the left-hand door in that area. But I think the two factors that are significant as to why there aren't aggravating factors here is because it was not the main door at the entranceway and also the fact that this is not a high-pedestrian traffic area like in a downtown sidewalk area. This is just an area in front of the hotel that he was walking in front of. Well, it may not be high-pedestrian. But, again, we're not disputing it. The hotel does lignate to Syria as a smoking area. There is a designated smoking area to the left. And he was using it, and he was attempting to go back in the hotel when he fell on the sidewalk. Correct. Those basic facts we agree upon. Correct. And I think maybe at this point it's a good effort to distinguish one of the cases plaintiffs cites in their brief, which is Harris v. Old Kent Bank. And in that case, the court considered two main factors in finding that the aggravating factors were present there that took the case out of the de minimis rule. And one of the facts was that the plaintiff was exiting, or she tripped and fell as she was exiting, the only point of ingress and egress, and also that it was reasonable to expect that somebody leaving a bank like she was might have been fumbling with their receipts or looking for their car keys. And neither of those factors are present here. As we discussed, this was not the place where the plaintiff entered or was going to enter. It was not the only point of ingress and egress. It was not even the main point of ingress and egress at the hotel. This was not the main door that the people entered. Let me ask you this. You're familiar with the 3rd District case, Bledsoe? Yes. And why would that case not be analogous here? In that case, the 3rd District declined to apply the de minimis rule on facts very similar, covered area, limited area for the landowner to monitor. Why doesn't that apply here? Sure, Judge. I would agree that the facts are dissimilar, though, because it's hard to tell from the court's description exactly what the entryway was, but I think the way the court described it was that it was a long, covered entryway that was just open on the one end. So there was a marble floor, and they said the plaintiff was entered there. But the key factor in that case was that the court said we're effectively treating this as being indoors, and therefore the rationale that I was talking about earlier for the de minimis rule, that the changing weather conditions are why you cannot expect the sidewalks to be perfect. Well, this is a covered drive-up, isn't it? In that case, we have a covered drive-up, right? It's more like an overhang-type situation. But it's the same in Bledsoe, right? No. Well, again, Your Honor, I don't believe so. And from my reading of Bledsoe is that this is a large, covered entryway, and it's only open on one end. Here, this is more of an overhang in that. You're saying the sides are closed? Excuse me. In this case, we're in Bledsoe. Bledsoe. I said it's only open on one end, which means that if it is, how many ends does it have? Yes. And I believe that's the case, Your Honor. Again, it's going solely based on what the description is from the court's decision there. There weren't any photographs. So you're saying in that case they said we're effectively treating this as not outdoors? Correct. And that's why they said a higher standard is going to apply because they said, again, the same rationale that when you have outdoor sidewalks and they're subject to these changing weather conditions, we're not going to expect that they're going to be in perfect conditions. Wait a minute. Didn't you say you had an overhang here? There's an overhang. Did the overhang cover the area where the plaintiff fell? I believe it does, but that still doesn't mean it's not subject to the changing weather conditions. I understand that. But in Bledsoe, this was not the evidence here in that Bledsoe. I've got the case here. They held that the business could be expected to monitor this area because it was a partially enclosed area. It was not fully exposed to the weather. Those are the facts of Bledsoe. Was this not an overhang that prevented the sidewalk or the area from being exposed? If somebody was standing at the exact location that the plaintiff fell and it was raining, would it be coming down on them or was it covered? I believe it was covered, Your Honor. Okay. That's what happened in Bledsoe. Well, I think that's not what Bledsoe says, though. The court describes the entryway as it's a large, covered corridor, open on the end, extending to the outside of the building, and there was a marble floor. And I don't think my picture in my head of this is that it is a long entryway and the plaintiff was injured at the one end, not closest to where it's open on the other end. And I think the key here is that I think if you look at the pictures, it's going to be difficult to characterize the area of the sidewalk here where the plaintiff fell as being indoors. So in Bledsoe, it was a marble floor, and here it's cement? Yes. Yes. According to the court in Bledsoe, they said it was a marble slab flooring at the entryway that had a crack running. Yeah, but the case didn't turn on that. The court never said that because this is a marble floor, it doesn't heave the way a sidewalk does. We're fighting in favor of or against the defendant, right? No, but they did focus on the fact that they considered that entryway was the place where the injury occurred to be essentially indoors, and therefore the higher standard of care applied rather than the normal rule, the demerits rule. And this is also covered, correct? Yeah, it's covered, Your Honor. But I don't believe that this would be similar to the entryway in Bledsoe simply because if you look at the pictures here, this is exposed to the outdoor element. Let me ask you one final, very one-pointed question. Forget about the defendant's height. Forget about the cover, partial cover. Forget about all that stuff. How difficult would it be for the business to monitor 10 feet of a sidewalk? How difficult of a burden would it be? Well, Judge, I think that's a question where... Because that's the genesis of the rule. Well, I think that's not exactly the genesis of the rule, but I think the point is that under the de minimis rule, there are some variations that you have to accept as just being... Forget about the variations. You're not answering my question. Sure. We'll go back and forth all day about the genesis of the rule for municipalities. I can quote you the law. The whole reason is, quote-unquote, because of the burden it would place on the landowner to inspect and monitor the sidewalks. So the question becomes, how difficult would it be for the establishment to monitor 10 feet? Give me your best argument. Maybe you're going to say it's very burdensome, but tell me, practically speaking, how difficult that would be. Well, I think the monitoring might not be the direct issue. I think the issue is trying to then fix it, which means they would have to dig up the entire sidewalk, change it, and I think that's where the real burden comes in, and I think that is part of the genesis of the de minimis rule, is that it's difficult to then dig up these large slabs of concrete and repair them and make them as perfect as you can. Are you going to be digging them up and repairing them every couple of months? Well, I think, yeah, I guess the issue is realistically it might have to do with every season, every winter, every spring, every fall, depending on what type of weather there is. Any time that there might be a shift in the soil, that would create the shift in the foundation. But I guess the one other factor I want to point out is that I think what distinguishes this case from a lot of the other de minimis cases is that here we have expert testimony. We had an expert, a licensed architect, who looked at this situation. He's an expert in hardscape design, and he analyzed this and looked at the area and said, this comports with typical industry standards. He said, I don't find this to be a reasonable harm. I don't find this to be unsafe. He said that this comports with industry standards. Is that what he said or was that up to the jury to decide? Well, I think it's up to him. Basically he's saying he doesn't think this is a dangerous condition. Shouldn't it be for the trier effect, though? Not in this situation because that testimony stands unrebutted. The plaintiff had an opportunity to present their own expert testimony. Whether they couldn't find an expert or simply chose not to, this expert testimony stands unrebutted right now. There is no other evidence indicating that this area was in any way unsafe. So we have this unrebutted expert testimony saying this is unsafe. Well, unsafe is different than the height of it, correct? Well, I think that's one of the factors. I suppose you could say that three or four inches is not unsafe. Does that mean it can't be considered in a summary judgment motion? Well, I guess that's the point is that when you look at the overall expert's testimony, he says based on the slope and the foundations that this was constructed properly, there's no defect here, and it's not unusually safe. So for those reasons, we ask that the court affirm the grant of summary judgment in favor of our client. Thank you. Thank you. Do you have any other questions? Mr. Rock. May it please the court, if I can begin with the blood soak case, which I believe is on point, and I believe that this court should not extend the hard time holding. I think that to stem off the arguments that we just heard, the third district was concerned more with the fact, less with the fact, that it was a partially covered or somewhat covered or somewhat exposed to the elements entryway, and more concerned with the fact that it was an entryway, and that's distinguishable from a sidewalk. And the crux of their logic there was that it can be expected to draw more patrons, that this threshold, if it does have a defect that may be considered dangerous, is an extra potential danger, an added danger. And lastly, that monitoring that entranceway, that small area where businesses hope to have large foot traffic, doesn't carry the same burden as monitoring an expansive sidewalks, particularly in light of some governmental immunity type case where we're talking about a large city. Therefore, I don't believe that this court should, I believe that this court should decline to extend the holding in hard time to this fact pattern. I think that this is an uncontested matter that the plaintiff was in a designated smoking area. Can you back up a second? Yes. You said their holding is an entry is not a sidewalk. Why is an entry not a sidewalk? What did they say? I think they said it was distinguishable from a sidewalk. Because? Well, even if a sidewalk led directly to an entranceway, that makes it different than a large expansive sidewalk or a Walmart parking lot, for example. We can look at acres and acres of a Walmart parking lot and distinguish that from the sidewalk that's directly in front of a sliding door at Walmart. And there should be a different duty on the landowners in that respect. So it's the location, not what it's made of, not how well it's protected from the elements, not whether it's indoors or outdoors. It's because it's an entry. You know, I think, and to use maybe counsel's argument, I think that the fact that this is a partially covered entranceway maybe puts more of a duty, knowing that we have winters that we do in Chicago, the Chicagoland area, knowing that the landowners are in the best, last place to understand and appreciate the type of entranceway they have. And in this situation, it is a slab entranceway that, you know, whether for aesthetics or otherwise, does have seams within it. And knowing that those seams can move with our weather changes, in light of the location of that choice to have that sort of entryway, may put even more of a duty on that landowner to... So would you say to a landowner, don't put a cover on it, make it gravel, and then that way you lessen your burden to maintain the absence of defects? So we run into that argument of, is this like a natural accumulation? Should we tell people not to plaster? No, because you're opening yourself up to liability. Well, I think that this situation, counsel may try to distinguish it saying that it's not a large traffic area as if it's a downtown city area. However, the purpose of this hotel is presumably to have a large traffic area at their front door. And I'd rather not get caught up with this front door being a main door, the revolving door, or a side door. With all due respect, counsel, my question is, what are we saying to landowners? Are we saying that, you know, to listen to your argument, Indian Lakes would be better off if they didn't cover this and made the entranceway gravel? I think you could look at it one way or the other. If it is covered, we likely don't have the environmental factors and likely don't present it before you today. But whether it's covered or not does not impact the frost line. And whether or not there's snow and ice that accumulates on the cement. I mean, we just had a winter where I don't care what was covered. You had to shovel the snow away from the door. So how can I assume that just because it's covered, that changes everything? Well, I think that then I would go back to the fact that this is the main door, that Indian Lakes is directing their people to some extent, their customers, to use designated outdoor smoking areas. And the traffic is the aggravating factor. Well, I think that the traffic really is a notice issue. Is it the traffic or the control of the traffic? Where would you be if Indian Lakes didn't have any designated area to direct people to? What if they just said there's no smoking in this building? Wouldn't they be in better shape than they are in this case? Which I believe is the situation, Your Honor. I don't believe it's a smoking facility. I believe you do have to leave the facility. Right, but they said no smoking in the facility. And they don't tell anybody where to go. Well, he's got a better argument under the minimus rule than, hey, we can't monitor the entire area. These people could be wandering along the place smoking. Right. And our point of fear is next to a batch next to two ashtrays 10 to 12 feet away from work. So, I mean, what we're saying is, look, don't designate a smoking area. Don't put ashtrays out there. The less you do, the less burden you assume. I mean, isn't that the upshot here? Don't you? Hold on, just let me. Well, I would respectfully disagree. I mean, obviously that goes against public policy. And it would also go against. What do you mean public policy? Well, I mean, not doing anything to ensure a safe premises or to accommodate your customers. Well, no, it's a safe premise. I mean, gravel is, people have been walking on gravel forever. Sure. I mean, that might go to the aesthetics. I mean, the reason that they have this sort of entryway is clearly an aesthetic purpose or can be argued to be an aesthetic purpose. They chose to have it. Bottom line, at what point, covered or uncovered, at what point does a, I don't know how to call it, a defect, an imperfection in a sidewalk trigger the duty to dig it up and repair? You know, where are we? I mean, we've got descriptions here of half inch to an inch and a quarter. I mean, where's the line? Even if there is traffic, I mean, it happens at front doors, side doors, whether it's the main door or not. At what point is de minimis just irrelevant? The size de minimis, I guess. Sure. I think I would stand by my argument that it deals with the location, that the location is paramount in considering when should it be rectified, when should there be a remedial measure. Right outside the door. Is a quarter of an inch, do I dig up the sidewalk? Does it have to be a half, three quarters, inch and a half? Your Honor, I would argue anything that would cause an injury, anything that is potentially a hazardous situation that doesn't leave the defendant's property in a reasonably safe condition, that would cause an injury. So I think if we get caught up in the actual size but look more towards the location and what that plant is actually doing, traversing that area, I think that's the balancing factor. And to just respond to the counsel and your question regarding the affiant and the half inch measurement, very briefly, that individual, I think it's a point on, that affiant went out three and a half years after this incident. Two winters after change within this. And we're not contesting a well-qualified affiant, but are contesting what's the best evidence. You're saying that the basis of his opinion could arguably be flawed because of when he went out. Sure. Is that what you're saying? And that weight should be considered. But nonetheless, you didn't rebut it at all. And that was a trial claim, Your Honor. We believe that we have the best evidence to present to a jury, with photographs taken in a very close proximity or temporal relationship to the incident, and the plaintiff having fallen and observed while he was on that mat the discrepancy, and then looking at those photographs saying, yes, this is the spot, and this is my best estimation for a jury to consider if they believe me or not is one thing or another. But this is what I believe the discrepancy was. But in the scope of a motion for summary judgment, expert is tendered with an affidavit, and it stands unrebutted. It carries some weight. I would tend to agree with you in the general sense that an expert's opinion is something that would carry more weight than a layperson's opinion. However, I don't believe that measuring a defect in a sidewalk is something that's outside. Not the size of the defect. You've conceded that. But whether or not it was inherently dangerous, or whether this was normal to be expected in northern Illinois given our weather. Right. And I believe that that's all within the kin of a layperson of a juror, what's reasonable, what's not. Right. But I'm talking about just within the scope of the summary judgment. You presented nothing to rebut that conclusion. Is that correct?  That opinion, that expert opinion. That is correct, Your Honor. We believe that we had the best evidence to present a question of fact. Okay. That's all. I think your time is up. Thank you, Your Honor. Thank you. We'll take the case under advisement. The court's adjourned.